```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

JENNIFER T.,                      :
   Plaintiff,                     :
                                  :
v.                                : Civil No. 3:20CV159 (AWT)
                                  :
ANDREW SAUL, COMMISSIONER OF      :
SOCIAL SECURITY,                  :
   Defendant.                     :
```

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Jennifer T. appeals the Commissioner's final decision denying her application for disability insurance benefits ("DIB") pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

The plaintiff filed a motion for reversal or remand, contending that the Administrative Law Judge ("ALJ") erred because he:

> 1) failed to develop the record as to opinion evidence after failing to assign significant weight to any provider or reviewing physician; 2) had no basis for his RFC description; and 3) composed an incomplete Residual Functional Capacity (RFC) description[,] leaving out several work-preclusive factors.

Pl.'s Mem. in Support of Mot. to Reverse ("ECF No. 21-1") at 2.

The Commissioner filed a motion for an order affirming the Commissioner's decision, maintaining that "the Commissioner's findings are supported by substantial evidence and made by a correct application of legal principles." Def.'s Mot. to Affirm ("ECF No. 23") at 1.

For the reasons set forth below, the court concludes that the ALJ applied the correct legal principles and that the ALJ's findings are supported by substantial evidence. Thus, the Commissioner's final decision is being affirmed.

**I.   Legal Standard**

"A district court reviewing a final [] decision . . . [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981). The court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. See Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching a conclusion and whether the decision is supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987). Substantial evidence "is more than a mere scintilla. It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted).

Absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial

evidence.  See Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); 42 U.S.C. § 405(g)("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Thus, if the Commissioner's decision is supported by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position.  See Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

## II. Discussion

### A. Medical Opinions

The plaintiff contends that the ALJ erred because he "failed to develop the record as to opinion evidence after failing to assign significant weight[1] to any provider or reviewing physician."  ECF No. 21-1 at 2.  Specifically, the plaintiff argues that the ALJ "did not properly evaluate opinion evidence" (ECF No. 21-1 at 7) in multiple ways:  The ALJ failed "to even name" two mental health professionals[2] (ECF No. 21-1 at 8); he "ignored" (ECF No. 21-1 at 1) and failed "to assign

---

[1] Exhibit No. 1D (R. 188) indicates that the plaintiff filed her DIB application on March 31, 2017 (R. 188), not March 13, 2017, as the plaintiff indicates (ECF No. 21-1 at 2).  Therefore, 20 C.F.R. §§ 404.1520b (evidence consideration), 404.1520c (consideration and articulation of medical opinions and prior administrative medical findings) and 404.1513 (evidence categories), which became effective on March 27, 2017, apply to this case.
[2] The ALJ identified the opinions of Dilice Robertson, DNP APRN and MaryJeanne Chichester, LCSW by date, content, and specific exhibit number (6F, 10F, 4F and 9F).

3

significant weight" to three mental health professionals' opinions (ECF No. 21-1 at 2, 7, 14)[3]; he "partly quoted" § 404.1520c(a) "but did not actually explain how he must evaluate opinion evidence" (ECF No. 21-1 at 7); he failed to consider § 404.1520c(a) factors[4] (ECF No. 21-1 at 7); he failed "to ensure that all necessary and relevant information is produced" (ECF No. 21-1 at 12)[5]; and he "relied exclusively on the opinions of non-treating and non-examining doctors" (ECF No. 21-1 at 15)[6] whose opinions were "[c]learly . . . unreliable" (ECF No. 21-1 at 15) and based on "precious little relevant medical evidence"[7] (ECF No. 21-1 at 15) in an "incorrect file" (ECF No. 21-1 at 14) containing the wrong onset date[8] (ECF No. 21-1 at 7, 14-15), and

---

[3] The relevant opinions are: Dilice Robertson, DNP APRN's February 5, 2018 mental impairment questionnaire (6F at R. 451-55) and September 10, 2018 Mental Residual Functional Capacity Questionnaire (10F at R. 503-09); MaryJeanne Chichester, LCSW's September 5, 2017 (4F at R. 444) and May 17, 2018 (9F at R. 500) treatment summary letters; and Consultative Examiner Dana Martinez, Psy.D.'s September 18, 2017 Mental Status Examination (5F at R. 446-48).

[4] The factors are: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. See 20 C.F.R. § 404.1520c (c)(1)-(5) (effective March 27, 2017).

[5] The plaintiff contends that the ALJ did not subpoena or insist on the plaintiff's release of LCSW Chichester's records. ECF No. 21-1 at 12.

[6] The opinions at issue were from Lisa Fizpatrick Psy.D. (R. 82-92) and Stacey Fiore Psy.D. (R. 94-105).

[7] The plaintiff writes that "[o]n reconsideration, the state agency had acquired no new evidence as compared to the initial determination. At least two sets of mental health records had been requested but not received (Tr. 96-97)". She also states that they "did not review" Ms. Chichester's opinion nor indicate consideration of CE Martinez's opinion, although they "had or should have had access to" it. ECF No. 21-1 at 15.

[8] The court agrees with the defendant on this issue:
> Plaintiff filed an application for disability insurance benefits on March 31, 2017, in which she initially alleged disability beginning February 1, 2017 (Tr. 188-89). Less than two months later, on May 18, 2017, Plaintiff filed an amendment to her application, in which she amended the date of her alleged onset of disability to April 15, 2012, stating that she

"unknown"[9] (ECF No. 21-1 at 15), outdated[10] and "irrelevant"[11] evidence.

The plaintiff also contends that "because the opinions of the state agency are based on an incorrect file", "by discounting the opinions of the three treating or examining sources[,] the ALJ" is "left without reliable opinion evidence with which to base his RFC"; he is "left merely with his own layman opinion" which cannot substitute for treating and examining ones.  ECF No. 21-1 at 14-15.  In addition, the plaintiff marshals evidence to support a disability finding.

The defendant maintains that the ALJ followed applicable legal standards which did not require weighting medical opinions or articulation of all § 404.1520c factors; that the ALJ

---

"became unable to work because of [her] disabling condition" on that date (Tr. 190). In three disability reports she filed with the state agency over the next year, Plaintiff reaffirmed her alleged disability onset date as April 15, 2012 (Tr. 222, 224, 236, 238, 260). Not until the hearing with an ALJ, on September 27, 2018, did Plaintiff's representative indicate that Plaintiff's alleged onset of disability should be amended back to February 1, 2017 (Tr. 40). Therefore, at all times relevant to Dr. Fitzpatrick's and Dr. Fiore's evaluation of the record, Plaintiff alleged disability beginning April 15, 2012 (Tr. 86-90, 98-103). Furthermore, the ALJ specifically acknowledged that Plaintiff amended her alleged disability onset date to February 1, 2017, meaning he properly evaluated Dr. Fitzpatrick's and Dr. Fiore's opinions in that context (Tr. 15).

Def.'s Mem. in Support of Mot. to Affirm ("ECF No. 23-1") at 6.

[9] The plaintiff appeared to refer to "the state agency rel[ying] on reports from a prior file, that was not part" of the exhibit list. ECF No. 21-1 at 14.

[10] The plaintiff contends that the ALJ relied on pre-onset information as the basis for concluding that the plaintiff was not taking medication (ECF No. 21-1 at 14).

[11] The plaintiff contends that the ALJ relied on a pre-onset September 25, 2014 consultative evaluation by Rahim Shamsi (ECF No. 21-1 at 15).

5

properly evaluated state agency, examining and treating source opinions; that the ALJ based his finding on the entire record, including medical evidence and the plaintiff's own statement, not merely on the ALJ's subjective opinion; and that deference to the ALJ's findings is appropriate because his opinion is supported by substantial evidence.

> The Code of Federal Regulations reads:
>
> We consider evidence to be insufficient when it does not contain all the information we need to make our determination or decision.

20 C.F.R. § 404.1520b (b) (effective March 27, 2017).

> If any of the evidence . . . , including any medical opinion(s) and prior administrative medical findings, is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have.

20 C.F.R. § 404.1520b (b)(1) (effective March 27, 2017).

> . . . . We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. . . . we will consider those . . . **using the factors** listed in paragraphs (c)(1) through (c)(5) of this section, **as appropriate**. The most important factors we consider when we evaluate the persuasiveness . . . are supportability . . . and consistency . . . . **We will articulate how** we considered . . . . how **persuasive** we find all of the medical opinions and all of the prior administrative medical findings in your case record. Our articulation requirements are as follows: . . . . we will explain how we considered the **supportability and consistency** factors . . . . **We** may, but **are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate** . . . .

20 C.F.R. § 404.1520c (effective March 27, 2017)(emphasis added).

### i. Dr. Dilice Robertson, APRN

As to the opinions of Nurse Practitioner Robertson, the ALJ wrote as follows.

### a. Mental Impairment Questionnaire

> On February 5, 2018 the claimant's treating provider filled out a mental impairment questionnaire. . . . (Exhibit 6F []). This opinion is not persuasive. It is supported by only two months of treatment and inconsistent with the longitudinal record which shows the claimant to be less impaired. The treating provider opined that it is always a problem focusing long enough to finish simple activities or tasks, yet [th]e claimant reported that she is able to take care of her son, w[as] able to cook, clean, and do laundry (Exhibit 8E at 2). In addition, the claimant consistently was observed to have logical thought processes. (2F at 16). She was also regularly found to have good concentration, memory, and attention (Exhibit 2F at 20). Subsequent mental status exams revealed her to have goal[-]oriented thought content (Exhibit 7F at 26, 21, 18, 15, 11, 7). Therefore, I find that this opinion is not consistent with the medical evidence of record and not supported by the treatment record.

R. 24.

Here, the ALJ articulated "appropriate" factors for his finding of "not persuasive": The opinion was based on two months of treatment; was inconsistent with the longitudinal record; the plaintiff reported that she was able to take care of her son, cook, clean, and do laundry; she was consistently observed to have logical thought processes, regularly found to

7

have good concentration, memory, and attention; and subsequent mental status exams revealed goal-oriented thought content.

### b. Mental RFC Questionnaire

> On September 10, 2018 the claimant's treating provider completed a[] mental residual functional capacity questionnaire. . . . (Exhibit 10F). This opinion is not persuasive because it is not supported by the totality of the medical record which shows the claimant to be cooperative, have appropriate eye contact, normal speech, good articulation, euthymic mood, and appropriate affect (Exhibit 3F at 20). The claimant's treating provider opined that the claimant had an extreme limitation in her ability to adapt, and that the claimant cannot sustain attention at all. However, the claimant reported that she is able to take care of her son, to follow instructions while cooking, to finish cleaning, and independently do laundry (Exhibit 8E at 2). Also, repeated mental status exams revealed no psychomotor impairment, an affect congruent with mood, and intact thought process (Exhibit 7F at 26, 21, 18, 15, 11, 7). Therefore, I find that this opinion is not entirely consistent with the medical evidence of record and not supported by the treatment record.

R. 25.

Here, the ALJ articulated the basis for his finding of "not persuasive": The totality of the medical record shows the claimant to be cooperative, have appropriate eye contact, normal speech, good articulation, euthymic mood, and appropriate affect; the plaintiff reported that she was able to take care of her son, to follow instructions while cooking, to finish cleaning, and to independently do laundry; and repeated mental status exams revealed no psychomotor

impairment, an affect congruent with mood, and intact thought process.

### ii. MaryJeanne Chichester, LCSW

As to the opinions of Licensed Clinical Social Worker Chichester, the ALJ wrote as follows.

#### a. September 5, 2017 Statement

> On September 5, 2017 the claimant's treating provider provided a statement . . . . (Exhibit 4F []). This opinion is not persuasive because it is inconsistent with the medical record. This opinion suggests that the claimant's thought patterns impede her ability to focus and concentrate on daily tasks. However, the claimant reported that she is able to take care of her son, to cook, clean, and do laundry (Exhibit 8E at 2). Also, the claimant consistently was observed to be cooperative, have normal motor activity[,] speak clearly[,] and have logical thought processes. (2F at 16). She was also regularly found to have good concentration, memory, and attention (Exhibit 2F at 20). Subsequent mental status exams revealed clean and well[-]groomed appearance, fair eye contact, no psychomotor impairment, affect congruent with mood, intact thought process, goal[-]oriented thought content, intact perception, poor concentration, fair memory (Exhibit 7F at 26, 21, 18, 15, 11, 7). Therefore, I find that this opinion is not consistent with the medical evidence of record and not supported by the treatment record.

R. 23.

Here, the ALJ articulated the basis for his finding of "not persuasive": The plaintiff reported that she was able to take care of her son, to cook, clean, and do laundry; she was consistently observed to be cooperative, have normal motor activity, speak clearly, and have logical thought processes;

9

was regularly found to have good concentration, memory, and attention; and subsequent mental status exams revealed clean and well-groomed appearance, fair eye contact, no psychomotor impairment, affect congruent with mood, intact thought process, goal-oriented thought content, intact perception, poor concentration, and fair memory.

### b. May 17, 2018 Statement

> On May 17, 2018 the claimant's treating provider submitted a statement . . . . (Exhibit 9F []). This opinion is also not persuasive because it is inconsistent with the medical evidence of record that shows that the claimant is able to take care of her son, able to cook, clean, and do laundry (Exhibit 8E at 2). Also, the claimant consistently was observed to be cooperative, have normal motor activity[,] speak clearly[,] and have logical thought processes. (2F at 16). She was also regularly found to have good concentration, memory, and attention (Exhibit 2F at 20). Subsequent mental status exams revealed clean and well[-]groomed appearance, fair eye contact, no psychomotor impairment, affect congruent with mood, intact thought process, goal[-]oriented thought content, intact perception, poor concentration, fair memory (Exhibit 7F at 26, 21, 18, 15, 11, 7). Therefore, I find that this opinion is not consistent with the medical evidence of record and not supported by the treatment record.

R. 24-25.

Here, the ALJ articulated the basis for his finding of "not persuasive": The plaintiff reported that she was able to take care of her son, able to cook, clean, and do laundry; she was consistently observed to be cooperative, have normal motor activity, speak clearly, and have logical thought processes;

10

she was regularly found to have good concentration, memory, and attention; and subsequent mental status exams revealed clean and well-groomed appearance, fair eye contact, no psychomotor impairment, affect congruent with mood, intact thought process, goal-oriented thought content, intact perception, poor concentration, and fair memory.

### iii. Dana Martinez, Psy.D.

As to the opinions of the Consultative Examiner, Dr. Martinez, the ALJ wrote:

> On September 18, 2017 the claimant underwent a mental status examination. Dana Martinez, Psy.D., opined . . . . . (Exhibit 5F []). This opinion is not persuasive. Although this opinion is the result of a direct examination, the examiner did not have the benefit of treating and evaluation of the claimant for an extended period. Also, this opinion is inconsistent with the medical records that show a lesser degree of limitation than the examiner opines. For instance, Dr. Martinez opined that the claimant's ability to sustain relationships and respond appropriately to her supervisors, coworkers, and the general public significantly limited by her personality disorder. Yet, the claimant consistently was observed to be cooperative, have appropriate eye contact, normal speech, good articulation, euthymic mood, and appropriate affect (Exhibit 3F at 20). Subsequent mental status exams revealed clean and well[-]groomed appearance, fair eye contact, no psychomotor impairment, affect congruent with mood, intact thought process (Exhibit 7F at 26, 21, 18, 15, 11, 7). Therefore, I find that this opinion is not entirely consistent with the medical evidence of record and not supported by the treatment record.

R. 23-24 (emphasis in original).

Here, the ALJ articulated the "appropriate" factors for his finding of "not persuasive": Although this was a direct examination, the examiner did not have the benefit of treating and evaluating the claimant for an extended period; the plaintiff consistently was observed to be cooperative, have appropriate eye contact, normal speech, good articulation, euthymic mood, and appropriate affect; and subsequent mental status exams revealed clean and well-groomed appearance, fair eye contact, no psychomotor impairment, affect congruent with mood, intact thought process.

### iv. Prior Administrative Findings[12]

As to the October 4, 2017 opinion of Lisa Fitzpatrick, Psy.D. on initial review and the February 20, 2018 opinion of Stacy Fiore, Psy.D. on reconsideration, the ALJ wrote:

> As required, I also took into consideration all applicable state agency assessments which were made part of the claimant's file (Exhibits 1A, 3A). On October 4, 2017 and February 20, 2018 the claimant's medical records were examined by state agency consultants . . . . These opinions are persuasive, as they represent excellent consideration of the medical evidence provided that shows the claimant's ongoing symptoms as being treated conservatively with a combination of therapy and medication. This combination of therapy and medication allows the claimant to be cooperative, have appropriate eye contact, normal

---

[12] The Federal Code of Regulations defines a prior administrative medical finding as "a finding . . . about a medical issue made by [] Federal and State agency medical and psychological consultants at a prior level of review . . . ." 20 C.F.R. § 404.1513(a)(5) (effective March 27, 2017).

12

speech, good articulation, euthymic mood, and appropriate affect (Exhibit 3F at 20). Further, the claimant was regularly observed to have fair eye contact, no psychomotor impairment, affect congruent with mood, and intact thought process (Exhibit 7F at 26, 21, 18, 15, 11, 7). Because this opinion is consistent with the medical evidence that shows that the claimant is treated conservatively with a combination of therapy and medication, and because it is consistent with the claimant's reported activities of daily living as well as treatment observations, I find that these opinions are persuasive.

R. 25.

Here, the ALJ articulated the basis for his finding of "persuasive": The opinions are consistent with the medical evidence that shows that the claimant is treated conservatively with a combination of therapy and medication that allows the claimant to be cooperative, have appropriate eye contact, normal speech, good articulation, euthymic mood, and appropriate affect; she was regularly observed to have fair eye contact, no psychomotor impairment, affect congruent with mood, and intact thought process; and the opinions are consistent with the claimant's reported activities of daily living as well as treatment observations.

### v. Other Challenges

As to the ALJ's duty to develop the record, the court finds no error in the ALJ's decision to proceed with the evidence he had on file; the Decision demonstrates that the ALJ had sufficient evidence to make a disability

13

determination. As outlined above, consistent with the legal standard, the ALJ evaluated the medical opinions and articulated "more than a mere scintilla" of "relevant evidence" "a reasonable mind might accept as adequate to support [the] conclusion". Biestek, 139 S. Ct. at 1154.

Because the ALJ's decision was supported by substantial evidence, it is immaterial that substantial evidence also may support the plaintiff's position. See Schauer, 675 F.2d at 57. Under such circumstances, the court must defer to the ALJ. Id.

As to the remaining challenges[13], even if the court assumed error, the plaintiff fails to demonstrate the "reasonable likelihood" that remedying the identified challenges "would have changed the ALJ's determination" that the plaintiff "was not disabled", making remand for those reasons "unnecessary". Zabala v. Astrue, 595 F.3d 402, 409-10 (2d Cir. 2010). Therefore, the plaintiff's motion to reverse or remand on these grounds is being denied.

### B.  RFC

#### i.  Basis for Determination

The plaintiff contends that the ALJ "had no basis for his RFC description" (ECF No. 21-1 at 2), relying on an assumption that the ALJ based the RFC on "his own layman opinion". ECF

---

[13] See Part II.A. above, fns. 2, 5, 7, 9-11, and corresponding text at 3-5.

No. 21-1 at 14.

The defendant maintains that "the ALJ properly considered the entire record and—in addition to the medical opinions—based his findings on a variety of evidence, including treatment notes, examinations, and Plaintiff's own statements (Tr. 20-26)." Def.'s Mem. in Support of Mot. to Affirm ("ECF No. 23-1") at 13. The court agrees.

The ALJ wrote:

> In sum, the [] residual functional capacity assessment is supported by the longitudinal evidence of record that show[s] that, while the record documents some limitation due to the claimant's impairments, it does not document the level of limitation as alleged by the claimant. The claimant states she cannot work because of difficulties in memory, completing tasks, in concentration, understanding, following instructions, and getting along with others (Exhibit 8E at 6). However, she is able to take care of her son, adhere to instructions cooking, cleaning, and doing laundry (Exhibit 8E at 2). In March of 2012, the claimant was observed to have a fair appearance, was cooperative, normal motor activity, depressed, with clear speech, and no delusions and logical thought processes (Exhibit 2F at 16). Later that year, she also was found to have good concentration, memory, and attention (Exhibit 2F at 20). Despite noncompliance with her medication, in August of 2014 she was observed to have appropriate eye contact, was cooperative, had normal speech, good articulation, a euthymic mood, appropriate affect, and an intact thought process. (Exhibit 3F at 20). Subsequent mental status exams revealed a clean and well-groomed appearance, fair eye contact, no psychomotor impairments, an affect congruent with her mood, an intact thought process, goal[-]oriented thought content, intact perception, poor concentration, and fair memory (Exhibit 7F at 26, 21, 18, 15, 11, 7). Further, the claimant's medical records were examined by state agency consultants who opined that the claimant is able to understand and remember simple instructions and unable to consistently remember moderate to highly complex instructions. (Exhibit

>IA at 5-8). Another state agency consultant opined that the claimant is able to tolerate the social demands of simple-task settings, and would not be able to tolerate sustained contact with the public (Exhibit 3A at 9). In addition, during this period the claimant was not treated for acute symptoms, hospitalized, required the admission to an emergency room, or home attendant. Therefore, after careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can perform simple, routine tasks and can recall and execute simple, routine instructions. The claimant cannot work with the public and can tolerate occasional interactions with co-workers and supervisors. The claimant can tolerate occasional changes in the work setting and work procedures that are simple and routine in nature. The claimant can make simple, routine work plans.

R. at 26.

Here, the ALJ articulated the basis for his RFC determination, including references to treatment notes, medical opinions, and examinations. Therefore, the plaintiff's motion to reverse or remand on this ground is being denied.

### ii. Completeness

The plaintiff contends that the ALJ "composed an incomplete Residual Functional Capacity [] description[,] leaving out several work-preclusive factors." The plaintiff argues:

>The ALJ properly found that Ms. T[.] can only "tolerate occasional interactions with co-workers and supervisors." (Tr. 20). Based on this finding, he should have found Ms. T[.] disabled . . . . At Ms. T[.]'s hearing, the Vocational Expert (VE) testified that if Ms. T[.] was limited to "occasional [] work with coworkers" then there "are no jobs." (Tr. 77).

ECF No. 21-1 at 18.

16

The defendant maintains that "[t]he vocational expert testified to no such thing."

> Instead, the vocational expert testified that an individual with Plaintiff's vocational profile and RFC, including a limitation to occasional interactions with coworkers and supervisors, could perform work in occupations such as kitchen helper, laborer, and hand packager (Tr. 73-76). The ALJ then asked the vocational expert if work could be performed by someone further limited to occasionally not interacting appropriately with coworkers (Tr. 77). While the vocational expert testified that no jobs could be performed by such a person, the ALJ included no such limitation in the RFC (Tr. 20-26, 77). Nor does Plaintiff establish that such a limitation was required by the record in this case.

ECF 23-1 at 12-13.

The court agrees. Therefore, the plaintiff's motion to reverse or remand on this ground is being denied.

The plaintiff also argues that:

> Even the state agency reviewers . . . gave their opinions that Ms. T[.] is moderately limited in her ability to accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting, and set realistic goals or make plans independently of others (Tr. 87-90, 99).
> The term "moderate" . . . must be translated into the vocational terms of . . . at least occasional impairment. This is particularly important because of the vocational impact of even occasional off-task behavior.
> The ALJ properly included this limitation to only occasional coworker and supervisor interaction, but he erroneously found that Ms. T[.] can work with this limitation. As the VE testified, if Ms. T[.] was limited to occasionally working with coworkers then "there are no jobs." (Tr. 77).
>
> . . . .
>
> Even the state agency reviewers, whose opinion the ALJ erroneously relied on, gave their opinions that Ms.

17

> T[.] is moderately limited in her ability to understand and remember very short and simple instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an and reasonable number and length of rest periods (Tr. 87-90, 99).
>
> Here, again, the term "moderate" must be translated into the vocational terms of . . . at least occasional impairment. This is particularly important because of the vocational impact of even occasional off-task behavior.
>
> At Ms. T[.]'s hearing, the VE testified that off-task behavior over 15% of the work day cannot maintain employment (Tr. 78). Similarly, if she were absent once or twice per month, she would be termination (Tr. 78). "Even just one day a month missing work, she would not be employable." (Tr. 79).

ECF 21-1 at 20.

The defendant maintains that:

> in suggesting that the ALJ should have assessed greater limitations related to time off task, Plaintiff contends, without elaboration or citation to authority, that moderate limitations, such as those assessed by the ALJ at step three of the sequential evaluation, must be translated into vocational findings of "at least occasional impairment." See Pl.'s Br. 19-20. Defendant is aware of no such requirement anywhere in the regulations. As discussed above, the ALJ evaluated Plaintiff's complaints and the medical opinions as required by the regulations. He explained the reasons for his RFC findings, which were based on relevant evidence that a reasonable mind might accept as adequate to support those findings. Those findings are supported by substantial evidence and should be affirmed.

ECF 23-1 at 14. The court agrees. Therefore, the plaintiff's motion to reverse or remand on this ground is being denied.

### III. Conclusion

For the reasons set forth above, Plaintiff's Motion for Order Reversing the Decision of the Commissioner or in the Alternative Motion for Remand for a Hearing (ECF No. 21) is hereby DENIED, and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 23) is hereby GRANTED.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 22nd day of July 2021, at Hartford, Connecticut.

                                                 /s/AWT
                                      Alvin W. Thompson
                            United States District Judge